## WIGGINS v. UNITED STATES.
### No. 6918.

Circuit Court of Appeals, Ninth Circuit.
April 24, 1933.

Rehearing Denied June 2, 1933.

Murphy & Doherty, of Los Angeles, Cal., and Humphrey, Searls, Doyle & MacMillan, of San Francisco, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter and Alva C. Baird, Assts. U. S. Atty., all of Los Angeles, Cal., for the United States.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Defendant appeals from a conviction on the three counts of an indictment charging three similar violations of section 1114(b) of the Revenue Act of 1926[1] in the years 1926, 1927, and 1928, respectively. A jury trial was waived; by agreement the cause was tried by the court.

1. Defendant's plea of statute of limitations to the first two counts was overruled. Thereafter, in United States v. Scharton, 285 U. S. 518, 52 S. Ct. 416, 76 L. Ed. 917 (1932), the three-year period[2] was held applicable in prosecutions under section 1114(b); concededly therefore the first count was barred.

The second count charged an offense on March 7, 1927. As the indictment was returned on March 7, 1930, the question presented is whether the day on which the offense is committed is to be considered a part of the three-year period or only a point of time from which the period is to be computed.

We find no basis for distinguishing the present case from Burnet v. Willingham Loan & Trust Co., 282 U. S. 437, 51 S. Ct. 185, 75 L. Ed. 448 (1931), in which two statutes of limitations substantially similar to the one now in question were construed. The return for 1920 and for 1921 respectively was filed on March 15th of the succeeding year. Taxes for both years were assessed on March 15, 1926. The applicable statutory requirements were that the assessment be

---

[1] "Any * * * person who willfully attempts in any manner to evade or defeat any tax imposed by this title * * * shall * * * be guilty of a felony. * * *" 26 USCA § 1266.

[2] "No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found * * * within three years next after the commission of the offense. * * *" Act of Feb. 26, 1926, c. 27, § 1110 (a), 44 Stat. 115. But cf. Amendatory Act of June 6, 1932, c. 209, § 1108 (a), 47 Stat. 288, 18 USCA § 585.

made, for 1920, "within five years after the return was due or was made," and for 1921, "within four years after the return was filed." The court, excluding the day that the return was filed, held the taxes seasonably assessed.

Defendant points to passages in the opinion which imply that a more precise measure of time might be adopted, if there were reason for doing so. See 282 U. S. 439, 440, 51 S. Ct. 185, 75 L. Ed. 448. As such reasons, he urges (1) that in this, a criminal case, the statute should be liberally construed in favor of the accused, and (2) that, if the rule of the Willingham Case be applied, a part of a day would be excluded on which he had nevertheless been subject to indictment. Such, however, were not the reasons indicated in the Willingham Case. For there it was urged, but without success, that legislation is to be construed most favorably to the taxpayer. And in that case, inasmuch as the assessment could have been made on the return day, taxpayer lost a part of a day by its exclusion.

Defendant asserts that if the first day is to be excluded, the first month might just as well be excluded. But the first day is excluded because it is customary to regard a day as a point in measuring time. See 282 U. S. 439, 440, 51 S. Ct. 185, 75 L. Ed. 448. This reasoning is inapplicable to a month.

2. The second and third counts of the indictment charged that defendant had evaded "a large part" of his income tax for 1926 and 1927 by stating in his returns that gross income for those years was respectively $18,-339.62 and $20,805.53, when in fact it was much more, "to-wit" $30,690.06, and $30,591.-83.

Stating the testimony most favorably for defendant, the record shows that suspicion was first directed against him through anonymous phone calls received in August, 1929, by government tax officers in Los Angeles. They were told that defendant, an oral surgeon, practicing in Pasadena, had understated his income tax liability for a number of years, and that, as he was absent from his office for a few days, his books and records could be then and there conveniently examined. Government agents investigated at once. They found his nurse and secretary, who had kept his principal books since 1922, in charge of the office. She told them that she was the informant, turned over to them all of defendant's books and charts, and described the system used by him in falsifying tax returns. During the next ten days copies and summaries were made of this material.

Defendant returned early in September, but the fact that such examination had been made was not disclosed to him. According to his affidavit, filed in support of a motion to suppress, he did not learn of it until some time in 1931.

The evidence thus obtained plainly revealed a deliberate and systematic tax evasion for the years 1926 and 1927, and for other years as well, although with them we are not here concerned.

A motion seasonably made for suppression and return of this evidence because secured by alleged illegal search and seizure in violation of the Fourth Amendment had been denied. Objection to its introduction at the trial, as violative of the privilege against self-incrimination, was overruled. We find it unnecessary, in view of the conclusions we have reached in this case, to consider whether or not, under all the circumstances, the court erred in admitting this evidence.

■ The most important evidence, in our judgment, was defendant's own signed confession. This was in the form of a transcript of an examination by the officers, to which defendant had voluntarily submitted, as is hereinafter more fully disclosed. Although defendant has abandoned his objection to the admission of the confession made on the ground that the interrogation by the government agents was based on information obtained by them without his knowledge, through the alleged illegal search and seizure hereinabove referred to, it should be noted that the officials had received similar information from defendant's secretary; this alone sufficed as a basis for their questions. Cf. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426 (1920).

■ In the confession, defendant admitted that at least after 1925 he had kept two sets of books, one secret "true book" and another a "false book"; that he had used this system of bookkeeping for the purpose of evading his income tax; that the understatement of his gross income for the year 1927 was "probably $6,000" for 1926, "may have been about $5,000." This confession alone adequately establishes the essential elements in the case; that the admitted amounts of understatement differ somewhat from those charged in the indictment under a videlicet is immaterial.

■ But an uncorroborated extrajudicial confession, however complete and voluntary, will not, in this and in most jurisdictions,

justify a conviction. While the order of proof is immaterial, some corroborative evidence is essential. Here there is abundant corroborative evidence. Defendant's secretary described in detail how the books were kept, under defendant's supervision, for the purpose of making false returns. A technical assistant, employed by defendant during 1926, who also kept patients' charts and a day book, testified that two sets of books were kept and that the figures in them were not the same. Her successor testified that there was a second set of books and that the tallies in the false set were lower than those in the true one.

Of even greater weight was the testimony of the Bureau of Internal Revenue's special agent, in describing the events leading up to the confession. The night before, defendant's secretary, on her own initiative, arranged a meeting with defendant in her home; she so concealed two government agents that they could overhear the conversation. Her pretext for securing defendant's presence was a summons to her to appear the next day at the Bureau of Internal Revenue. Apart from defendant's statements to his secretary that night, concerning matters covered by the confession, his anxiety that patients' charts (containing accurate records of receipts) should be destroyed, his insistence that she should not tell the "truth," and his care in coaching her in what she was to say so that it should be consistent with the story that he had already told, together constitute highly suspicious conduct, strongly corroborative of the truth of the confession. His actions the next day when he accompanied his secretary to the bureau office similarly point to his guilt. While there he expressed to the officials the hope that the bureau "was convinced that everything was in good order." Thereupon he was told that the bureau was convinced that he had not given the true facts, that they did not "want to fool around any longer," and that if defendant had any further explanation he could make it. Defendant "steadied himself against the desk and sat down. The color left his face. His face took on a greenish hue * * * and he said 'he wanted to make a statement." It was then that he confessed.

■ The courts are not in accord as to the extent or degree of corroboration. It suffices to say that in the cases decided by this court far less than is to be found in this record has been deemed adequate. Mangum v. United States, 289 F. 213 (C. C. A. 1923); Pearlman v. United States, 10 F.(2d) 460 (C. C. A. 1926); Wynkoop v. United States, 22 F.(2d) 799 (C. C. A. 1927); Aplin v. United States, 41 F.(2d) 495 (C. C. A. 1930). As Judge Learned Hand has well said: "Independently they [any corroborative circumstances] need not establish the truth of the corpus delicti at all, neither beyond a reasonable doubt nor by a preponderance of proof." See Daeche v. United States, 250 F. 566, 571 (C. C. A. 2d, 1918).

The trial judge indicated that but for the documentary evidence admitted over defendant's objection he would not have found sufficient corroboration of the confession. This was evidently based on the assumption that the corroborative evidence must "establish" the corpus delicti. Such is not the law in this circuit.

After a careful review of the record, we have reached the conclusion that in view of the corroborated confession and disregarding entirely the evidence of records and charts, the guilt of defendant has been established beyond a reasonable doubt.

■ 3. There was no error in the denial of the motion in arrest of judgment. Defendant's affidavit in support thereof is a bare assertion that the grand jury returned the indictment solely on the basis of evidence secured by alleged illegal search and seizure. There is no proof, however, that the other evidence in the case was not also before the grand jury. In such circumstances the motion in arrest was properly denied. Cooper v. United States, 247 F. 45 (C. C. A. 4th, 1917); cf. Holt v. United States, 218 U. S. 245, 248, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Olmstead v. United States, 19 F.(2d) 842, 845, 53 A. L. R. 1472 (C. C. A. 9th, 1927), affirmed 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376 (1928).

Judgment affirmed as to counts two and three; reversed as to count one.